FILED
United States Court of Appeals
Tenth Circuit

September 1, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JOSE DEJESUS FERNANDEZ,

      Defendant - Appellant.

No. 08-5159
(N.D. Okla.)
(D.C. No. 4:01-CR-00065-TCK-1 &
4:04-CV-00918-TCK-PJC)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

Jose DeJesus Fernandez filed a 28 U.S.C. § 2255 motion to vacate, set aside or

correct his sentence arguing, *inter alia*, he received ineffective assistance of counsel

when his attorney failed to file a petition for writ of certiorari with the United States

Supreme Court as he had requested. The district court denied Fernandez's § 2255 motion

---

[*] Oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We have decided this case on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id*.

and denied his request for a certificate of appealability (COA).

We issued a COA on two issues—"whether Fernandez is required to demonstrate prejudice to succeed on his claims and, if so, whether he has made the required showing," and then appointed counsel to assist him. *See* 18 U.S.C. § 3006A. He now claims entitlement to extraordinary relief—recall of the mandate in an earlier merits appeal. We affirm.

## I.        BACKGROUND

Fernandez was convicted by a jury on federal drug charges involving a conspiracy to traffic methamphetamine. The United States Probation Office prepared a Presentence Report (PSR), which applied a four-level enhancement to Fernandez's base offense level for his role as an organizer/leader of a conspiracy involving more than five people. With this enhancement, the sentencing guideline range was 235 to 293 months imprisonment. The court sentenced him to 264 months, explaining "[a] sentence in the middle of the guideline range is appropriate, given the fact that with the adjustment for leader/organizer there are no other aggravating or mitigating circumstances for a crime of this type." (Appellee's Br., Attach. 2 at 4.)

Fernandez appealed, challenging both his conviction and sentence. Among other arguments, he asserted the trial court erred in applying the four-level leader/organizer enhancement. On December 8, 2003, we affirmed his conviction and sentence, specifically upholding the leader/organizer enhancement. *United States v. Fernandez*, 82 Fed. Appx. 656, 661-62 (10th Cir. 2003) (unpublished) (*Fernandez I*). He did not file a

petition for writ of certiorari with the Supreme Court so his conviction became final when his time to file expired, at the latest, May 6, 2004.[1] *See Clay v. United States*, 537 U.S. 522, 527 (2003).

On December 9, 2004, Fernandez filed this 28 U.S.C. § 2255 motion to vacate, set aside or correct his sentence arguing, *inter alia*, his attorney, Frank Lockhart, was ineffective for failing to follow his instruction to petition for a writ of certiorari.[2] He argued Lockhart's ineffectiveness violated the Sixth Amendment and the Criminal Justice Act (CJA) and claimed prejudice because he lost the potential benefit of *Blakely v. Washington*, 542 U.S. 296 (2004) (holding any fact, other than a prior conviction, that increases the penalty for a crime beyond the statutory maximum must be found by a jury). In support of his motion, he attached a declaration "under penalty of perjury" in which he stated he "repeatedly requested [his attorney] to file my certiorari to the

---

[1] Fernandez had 90 days from our decision to file a petition for writ of certiorari. *See* S. Ct. R. 13(1). Fernandez claims he obtained an extension of time in which to file his petition. The record does not indicate the length of the extension, if any. It could have been, at most, 60 days. *See* S. Ct. R. 13(5) ("For good cause, a Justice may extend the time to file a petition for writ of certiorari for a period not exceeding 60 days."). If he did not obtain an extension, his time to file expired on March 7, 2004. If he obtained a 60-day extension, his time to file expired on May 6, 2004.

[2] Fernandez raised three additional claims for relief: (1) trial counsel rendered ineffective assistance by failing to discuss with him the option of pleading guilty and the advantage he could have received—a three-level reduction in his offense level—for acceptance of responsibility; (2) trial counsel rendered ineffective assistance by failing to move for a two-point reduction in his base offense level pursuant to USSG §5K2.0(a)(1) on account of the more onerous conditions to which aliens are subjected in prison; and (3) the sentence imposed was unconstitutional under *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).

Supreme Court, which he never did." (R. Vol. I at 68.) He stated he "had another inmate file an extension of time to the high court," but was unable to secure similar assistance to prepare and file a timely petition. (*Id.*) In response, the government submitted an affidavit in which Lockhart stated he "kept in touch through letters with Mr. Fernandez after the Tenth Circuit decision and Mr. Fernandez never requested that [he] file a Petition for Certiorari." (*Id.* at 89.)

The district court did not hold an evidentiary hearing to resolve the factual dispute. Instead it decided Lockhart's performance could not have been deficient because "the Supreme Court has held that defendants have no right to counsel to pursue discretionary review." (*Id.*) It rejected Fernandez's argument that he was prejudiced by losing the benefit of *Blakely* because his conviction became final on March 7, 2004,[3] and *Blakely* was not decided until June 24, 2004. The court did not address Fernandez's claim that his attorney's alleged ineffective assistance violated the CJA.[4]

---

[3] This calculation may be incorrect. If Fernandez received a 60-day extension of the time period to apply for a writ of certiorari (as he claims), then his conviction did not become final until May 6, 2004. *See supra* n.1. It does not matter as both predate the *Blakely* decision.

[4] The court also rejected Fernandez's other arguments. As to his first argument, it concluded he failed to show trial counsel's performance was deficient because "counsel adequately advised Fernandez of his plea options" and he failed to show he was prejudiced because he could not demonstrate he would have received a reduction for acceptance of responsibility if he had pled guilty. (R. Vol. I at 108.) As to his second argument, the court determined Fernandez "failed to show a reasonable probability that he would have received a lesser sentence" if trial counsel had moved for a two-point reduction in his base offense level pursuant to USSG §5K2.0(a)(1) based on his alien status. (*Id.* at 110.) It noted this Court has never held the status of "deportable alien" is a permissible basis for a downward departure. Even if it were a permissible basis for a

The court denied Fernandez's request for a COA but permitted him to proceed *in forma pauperis* (*ifp*) on appeal. We granted the limited COA mentioned earlier.[5]

---

downward departure, the court concluded the prejudice Fernandez claimed was "entirely speculative." (*Id.*) Finally, it rejected Fernandez's challenge to his sentence under *Blakely* and *Booker* because this Court has held neither *Blakely* nor *Booker* apply retroactively to a federal defendant on collateral review. *See United States v. Bellamy*, 411 F.3d 1182, 1186-87 (10th Cir. 2005).

[5] We did not grant a COA on Fernandez's other claims because he did not "ma[ke] a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Fernandez argued the district court erred in resolving without an evidentiary hearing his claim that his trial counsel was ineffective for failing to discuss with him the option of pleading guilty. A court need not hold an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The court reviewed the motion and files and records of the case and determined no evidentiary hearing was required. We see no abuse of discretion. *See United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) (we consider "whether the district court's denial of an evidentiary hearing was an abuse of discretion").

Relying on *United States v. Guzman*, Fernandez argues the district court erred in resolving his claim that his trial counsel was ineffective for failing to move for a reduction in his base offense level pursuant to USSG §5K2.0(a)(1). 236 F.3d 830 (7th Cir. 2001). The *Guzman* court noted that in the Seventh Circuit, the fact a defendant is a deportable alien is "a permissible basis, in exceptional circumstances, for a downward departure" to the extent the defendant's alien status results in "conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense." *Id.* at 834. We have rejected a similar argument in an unpublished decision. *See United States v. Acevedo*, 7 Fed. Appx. 850, 851 (10th Cir. 2001) (unpublished). Even if it were a permissible basis for a downward departure, we agree with the district court that the prejudice Fernandez claims is "entirely speculative." (R. Vol. I at 110.)

We also agree with the district court that Fernandez's sentence does not violate *Blakely* and *Booker* because those decisions do not have retroactive effect on collateral review. *See Bellamy*, 411 F.3d at 1186-87. Fernandez could benefit from *Blakely* and *Booker* only if we recall the mandate to allow him to file a belated petition for writ of certiorari.

## II.    DISCUSSION

Indigent defendants do not have a constitutional right to counsel to pursue discretionary review.  *See Austin v. United States*, 513 U.S. 5, 8 (1994).  Because a defendant does not have a constitutional right to counsel on discretionary appeals, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), counsel's performance cannot be deemed constitutionally deficient for a failure to petition the Supreme Court for certiorari review.  *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982); *see also Nichols v. United States*, 563 F.3d 240, 251 (6th Cir. 2009); *Steele v. United States*, 518 F.3d 986, 988 (8th Cir. 2008).  Fernandez has no legitimate claim under § 2255.  *See Brown v. United States*, 34 F.3d 990, 991 (10th Cir. 1994) ("Section 2255 is available to correct errors of constitutional or jurisdictional dimension, or fundamental errors which result in a complete miscarriage of justice.").

Fernandez claims we should recall the mandate in *Fernandez I* because his counsel, Lockhart, did not comply with the requirements of the Tenth Circuit's CJA plan[6]

---

[6] The CJA Plan for the Tenth Circuit states in full:

Counsel *must* file a petition for a writ of certiorari if the client requests that such a review be sought, and, in counsel's considered judgment, there are grounds for seeking Supreme Court review that are not frivolous and are consistent with the standards for filing a petition contained in the Rules of the Supreme Court and applicable case law.  If, on the other hand, the client requests that counsel file a petition for a writ of certiorari and, in counsel's considered judgment, there are no such grounds for seeking Supreme Court review that are non-frivolous and for filing a petition as defined in the Rules of the Supreme Court and applicable case law, counsel *should* promptly so advise the client and submit to this court a written motion for leave to withdraw from the representation after the entry of judgment.

- 6 -

and he was prejudiced thereby. Our power to recall a mandate "is limited and should be exercised only in extraordinary circumstances." *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 114 F.3d 1513, 1522 (10th Cir. 1997); *see also United States v. Contreras*, 224 Fed. Appx. 862, 865 (10th Cir. 2007) (unpublished). The circumstances presented here are not extraordinary because Fernandez cannot demonstrate prejudice. Even in the unlikely event that the Supreme Court would grant a certiorari petition to decide the constitutionality of the federal sentencing guidelines when the petitioner had not preserved the issue in the trial court, it would be pure speculation to believe that he would have ultimately received any relief despite his failure to preserve the issue.

**AFFIRMED.**

Entered for the Court

**Per Curiam**

---

10th Cir. Rules, Addendum I, Part VI (emphasis added).

08-5159 *United States v. Fernandez*
**O'BRIEN**, J., concurring

I join the per curiam Order and Judgment, which properly affirms the denial of habeas relief. I write separately only to provide a more robust analysis of the issues.

To state a claim for relief cognizable under 28 U.S.C. § 2255, a petitioner must allege a violation of federal law constituting a "fundamental defect which inherently results in a complete miscarriage of justice, or an omission inconsistent with the rudimentary demands of fair procedure[.]" *United States v. Gordon,* 172 F.3d 753, 755 (10th Cir. 1999) (quotations omitted). According to the government Fernandez cannot obtain relief under § 2255 because the claimed error—counsel's failure to file a certiorari petition to the Supreme Court when requested to do so in violation of our CJA Plan[1]— does not qualify. *See Brown v. United States*, 34 F.3d 990, 991 (10th Cir. 1994) ("Section 2255 is available to correct errors of constitutional or jurisdictional dimension, or fundamental errors which result in a complete miscarriage of justice."); *see also Hill v. United States*, 368 U.S. 424, 428 (1962) (holding trial court's failure to ask defendant represented by counsel whether he had anything to say before imposing sentence "does not present exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent") (quotations omitted).

---

[1] The CJA Plan for the Tenth Circuit is reproduced in the per curiam Order and Judgment at n.6.

Fernandez admits his claim "falls outside § 2255's remedial scope." (Appellant's Opening Br. at 16.) However, he urges this Court to follow the lead of the Second, Fourth, Fifth and Seventh Circuits and construe his § 2255 motion as a motion to recall the mandate in *Fernandez I*, and then reissue the decision to allow him to timely file a petition for writ of certiorari. *See United States v. Johnson*, 308 Fed. Appx. 768, 769 (5th Cir.) (unpublished), *cert. denied*, 129 S. Ct. 2885 (2009); *United States v. Smith*, 321 Fed. Appx. 229, 233 (4th Cir. 2008) (unpublished), *cert. granted*, 129 S. Ct. 2763 and *remanded to* 357 Fed. Appx. 518 (2009); *Nnebe v. United States*, 534 F.3d 87, 92 (2d Cir. 2008); *United States v. Price*, 491 F.3d 613, 616 (7th Cir. 2007) (Ripple, J., in chambers); *United States v. James*, 990 F.2d 804, 804-05 (5th Cir. 1993).

In *Nnebe*, the Second Circuit considered "what relief is available when, in violation of [its] rules implementing the [CJA], appellate counsel promises to file a certiorari petition, but fails to do so." 534 F.3d at 88 (citation omitted). The government did not dispute Nnebe's contention that his counsel was aware of his desire to petition for certiorari and forwarded him a draft petition which was never filed. It argued Nnebe was not entitled to relief under § 2255 because he "is required to show prejudice, but cannot, because his petition would almost certainly have been denied." *Id.* at 90. Relying on *Wilkins v. United States*, 441 U.S. 468 (1979),[2] Nnebe argued the court should, without requiring him to demonstrate prejudice, construe his appeal from the denial of his § 2255 motion as a motion to recall the mandate and vacate judgment to afford him one clear

---

[2] The legal landscape changed considerably after *Strickland v. Washington,* 466 U.S. 687-88 (1984). *See infra* n.7.

opportunity to file a certiorari petition. The Second Circuit agreed, explaining:

> Given this construction [of Nnebe's application as one to recall the mandate], it would be illogical to conclude that the application should continue to be treated as though it were a *Section 2255* motion. The Supreme Court in *Wilkins* clearly signaled that the Courts of Appeals should make appropriate relief available so that defendants are not disadvantaged by the failures in representation by CJA counsel. This remedial purpose would be frustrated if the myriad procedural considerations that properly apply to Section 2255 motions, including that of demonstrating prejudice, are imported wholesale into "construed" applications. Consequently, Nnebe is not required to demonstrate prejudice by establishing that his certiorari petition would have been successful.

*Nnebe*, 534 F.3d at 91. In construing Nnebe's application in this manner, the court bypassed the standards governing § 2255 motions. It did not require a showing of prejudice, not because counsel's deficiency was based on a statutory violation as opposed to a constitutional error, but because it found extraordinary circumstances warranting construction of the application as a motion to recall the mandate, thus providing the relief it found "suggested by *Wilkins*."[3] *Id*.

*Wilkins*, however, did not address such a remedy in the context of a § 2255 motion. Rather, the *Wilkins* Court was presented with an untimely *pro se* petition for certiorari following an unsuccessful direct appeal. 441 U.S. at 468. Wilkins' court-appointed attorney failed or refused to file a timely petition for writ of certiorari notwithstanding his written request to do so and despite assurance from the attorney that

---

[3] The court said "we do not retreat from our view that recalling a mandate is an unusual remedy intended for extraordinary circumstances." *Nnebe*, 534 F.3d at 91. "Had Nnebe waited an unreasonable length of time to seek relief or presented less compelling evidence, we doubt his circumstances would have been extraordinary or that he would have been entitled to the relief we afford him." *Id.* at 92.

his request had been honored. Upon those facts, the Supreme the Court determined (on the government's recommendation) the proper remedy was to vacate the judgment and remand the case to the court of appeals so a timely petition for certiorari could be filed. *Id*. at 470-71. The Supreme Court noted:

> Had the petitioner presented his dilemma to the Court of Appeals *by way of a motion for the appointment of counsel to assist him in seeking review here,* the court then could have vacated its judgment . . . and entered a new one, so that this petitioner, with the assistance of counsel, could file a timely petition for certiorari.

*Id*. at 469 (emphasis added). The Court did not address whether this would be an appropriate remedy when presented to the court of appeals on collateral review.

As acknowledged by the Second Circuit in *Nnebe,* an appellate court's power to recall a mandate "is limited and should be exercised only in extraordinary circumstances." Our cases also urge caution. *Ute Indian Tribe of the Uintah and Ouray Reservation v. Utah*, 114 F.3d 1513, 1522 (10th Cir. 1997); *see also United States v. Contreras*, 224 Fed. Appx. 862, 865 (10th Cir. 2007) (unpublished) (power to recall mandate should be used sparingly; power is "to be held in reserve against grave, unforeseen contingencies") (quoting *Calderon v. Thompson*, 523 U.S. 538, 550 (1998)). The government contends Fernandez "has failed to show that his circumstances are sufficiently 'extraordinary' to merit the unusual remedy of recalling this Court's mandate." (Appellee's Br. at 9.) I agree.

The Second Circuit concluded Nnebe had demonstrated extraordinary circumstances because he had proceeded with diligence and "proffered compelling documentary evidence" in support of his claim. 534 F.3d at 91-92. Specifically, the

court credited Nnebe with seeking relief less than two months after he last heard from his attorney. *Id*. at 91. In fact, Nnebe sought relief under § 2255 less than 90 days after his conviction and sentence were affirmed. *Id*. at 89. Moreover, Nnebe attached correspondence from his attorney informing him that his conviction had been affirmed and advising "we must now seek a writ of certiorari in the Supreme Court of the United States." *Id*. at 88 (quotations omitted). Nnebe also attached a draft certiorari petition prepared and signed by his CJA attorney which Nnebe claimed had been included with his attorney's letter. *Id*. The court concluded these documents demonstrated "[Nnebe] requested his lawyer to file a certiorari petition and that his lawyer agreed to do so, but did not." *Id*. at 92. In contrast, Fernandez has provided nothing other than his declaration that he "repeatedly requested" Lockhart to file a petition for certiorari. Accepting his declaration as true, a remedy similar to that provided in *Nnebe* is not warranted given Fernandez's significantly less compelling circumstances, as well as his unreasonable delay in seeking relief.[4]

---

[4] I am not persuaded by cases from other circuits affording the remedy requested by Fernandez. In *Smith*, the defendant claimed, and the government conceded, he had requested counsel to file a petition for certiorari and counsel agreed to do so but did not in violation of the CJA. 321 Fed. Appx. at 231. The government did not object to the treatment of Smith's § 2255 motion as a motion to recall the mandate or the grant of that motion. *Id*. at 233.

In *Price*, appointed appellate counsel sent Price a letter advising that the next step would be to file a writ of certiorari to the Supreme Court and stating: "We will begin the process and let you know the outcome as soon as possible." 491 F.3d at 615 (quotations omitted). Judge Ripple concluded this letter, "fairly read, advised Mr. Price that counsel *was preparing* to file a petition for certiorari." *Id*. at 616. Further, counsel did not inform Price the petition for certiorari had not been filed until long after the time for

Fernandez claims he instructed his attorney to file a certiorari petition; he does not claim his attorney promised to do so and he was clearly aware of the filing deadline, as demonstrated by his efforts to obtain an extension of the filing period. Moreover, he waited seven months after the expiration of the extended deadline (May 6, 2004) to seek habeas relief (December 9, 2004) and did not attach any documentary evidence to his petition. In addition, the government "specifically disputes Fernandez's contention that he requested that Mr. Lockhart file a petition for certiorari." (Appellee's Br. at 24.) Fernandez argues "these purported distinguishing factors . . . are meaningless. All that matters is that Mr. Fernandez did, as the district court found, ask Lockhart to file a petition for writ of certiorari, and Lockhart did not do so." (Appellant's Reply Br. at 8.) I am not convinced, however, that a court-appointed attorney's failure to file a petition for certiorari when asked to do so by his client is sufficiently extraordinary, in and of itself, to warrant the exceptional remedy of recalling the mandate, particularly when the issue is presented by way of a 28 U.S.C. § 2255 motion in the district court.[5]

---

filing had passed, thus depriving Price of the opportunity to seek relief from the Court. *Id*. at 616-17.

Finally, in *James*, the issue came before the Fifth Circuit Court of Appeals on a *pro se* motion for appointment of counsel to file a petition for certiorari with the Supreme Court after the time for doing so had expired. 990 F.2d at 804. The appellant submitted an affidavit and copies of correspondence showing he timely requested, in writing, that his court-appointed counsel petition for certiorari. *Id.* at 804-05. Following the procedure suggested in *Wilkins*, the court of appeals vacated and reinstated its previous judgment and directed counsel to timely file a petition for certiorari with the Supreme Court. *Id*. at 805.

[5] *But cf. Johnson*, 308 Fed. Appx. at 769 (relying on Fifth Circuit precedent

- 6 -

In *Steele v. United States*, the Eighth Circuit granted a COA on one issue in Steele's § 2255 motion: "her claim that counsel's failure to honor her request to file a petition for certiorari constituted ineffective assistance of counsel." 518 F.3d 986, 987 (8th Cir. 2008). In affirming the denial of her motion, the court concluded § 2255 relief was not available because Steele had no constitutional right to the effective assistance of counsel in seeking certiorari review in the Supreme Court. *Id*. at 988.[6] Although Steele contended the court's CJA plan created a statutory right to effective assistance of counsel in filing a petition for certiorari, it did not consider a recall of its mandate to allow her an opportunity to file a timely petition. Rather, the court applied the standards governing § 2255 motions. *Id*. at 988-89. It stated: "Even if she had the right to counsel to file a certiorari petition, Steele would have had to show that she suffered prejudice from her attorney's failure to file a petition in order to establish a claim for ineffective assistance of counsel." *Id*. at 988 (citing *Strickland,* 466 U.S. at 691).

Because the circumstances presented here are neither extraordinary nor grave, Fernandez's § 2255 petition should not be construed as a motion to recall the mandate.

granting § 2255 relief on claims that appellate counsel failed to advise a defendant of his ability to seek certiorari review in violation of that court's CJA Plan, and without discussion of standard for recalling a mandate, court recalled mandate and appointed counsel to file petition for certiorari); *Smith*, 321 Fed. Appx. at 233 (finding deprivation of CJA right to counsel's assistance in filing a petition for certiorari sufficiently extraordinary to warrant treatment of § 2255 motion as one to recall the mandate).

[6] *See also Nichols v. United States*, 563 F.3d 240, 250-51 (6th Cir. 2009) (denying § 2255 relief where counsel performed deficiently under court's procedural rules requiring court-appointed counsel to file petition for certiorari in the Supreme Court if requested by client).

Therefore, his claim must be evaluated in the context of the standards governing federal habeas petitions alleging ineffective assistance of counsel. To prevail on an ineffective assistance of counsel claim under § 2255, a petitioner must show: (1) "counsel's performance was deficient" (*i.e.,* "fell below an objective standard of reasonableness") and (2) "the deficient performance prejudiced the defense." *Strickland,* 466 U.S. at 687-88.[7] The *Strickland* test applies to claims that counsel was constitutionally ineffective for failing to file a notice of appeal without the client's consent after having been requested to do so. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). It seems inconceivable that a lesser standard would apply when the claimed basis is statutory rather than constitutional. If the *Strickland* test is appropriate where counsel failed to file a notice of appeal (when an appeal is a matter of right), the test should also be appropriate where, as here, counsel failed to file a petition which affords only the (remote) possibility of discretionary relief.

A.      Deficient Performance of Counsel

As the per curiam Order and Judgment recognizes, indigent defendants do not have a constitutional right to counsel in pursuing discretionary review. *See Austin v. United States*, 513 U.S. 5, 8 (1994) ("[T]hough indigent defendants pursuing appeals as of right have a constitutional right to a brief filed on their behalf by an attorney, that right does not extend to forums for discretionary review.") (citation omitted). Generally, where there is no constitutional right to counsel there can be no claim of constitutionally ineffective assistance of counsel. *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982);

---

[7] *Wilkins, supra,* was decided in 1979, well before the comprehensive test for relief for ineffectiveness of counsel was announced in *Strickland*.

*Steele*, 518 F.3d at 988.  Thus, Fernandez cannot show his attorney's performance was deficient because it violated the Sixth Amendment.  *See* S. Ct. R. 10 ("Review on a writ of certiorari is not a matter of right, but of judicial discretion.").

Fernandez argues his attorney's performance was deficient because it violated our CJA Plan, which provides indigent defendants with a limited statutory right to have appointed counsel prepare and file a petition for a writ of certiorari.  If Fernandez requested the filing of a certiorari petition (which I assume he did), then his counsel was obligated by our CJA Plan to file such a petition, but only if he determined there was, *inter alia,* a non-frivolous basis for doing so.[8]  The record here does not provide sufficient information to determine whether counsel's failure to file the requested petition for certiorari was a considered choice and, if so, whether it fell below an objective standard of reasonableness.  But that is immaterial because Fernandez cannot show prejudice.  *See Strickland*, 466 U.S. at 697 (courts need not determine whether counsel's performance was deficient if it is easier to dispose of an ineffectiveness claim for lack of prejudice).

B.    Prejudice

To establish prejudice, Fernandez must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

---

[8] Lockhart did not seek leave to withdraw as counsel as <u>recommended</u>, but not required, by our CJA Plan.  *See* 10th Cir. Rules, Addendum I, Part VI ("[C]ounsel *should* promptly . . . advise the client [that there are no non-frivolous ground for seeking Supreme Court review] and submit to this court a written motion for leave to withdraw from the representation after the entry of judgment.") (emphasis added).

different." *Id.*, at 694. The government urges us to adopt the standard for assessing prejudice as set forth in *Steele, supra*, where the Eighth Circuit required petitioner "to show not only that she would have succeeded in obtaining a writ of certiorari if counsel had filed a petition, but also a reasonable probability that she would have obtained relief as to her sentence." 518 F.3d at 988-89. Fernandez argues *Steele's* approach is unreasonably stringent and insists he need only show that, but for counsel's violation of the CJA, he would have petitioned for discretionary review by the Supreme Court. I believe the appropriate showing lies between these two extremes.

The *Strickland* Court recognized three categories of cases in which prejudice is presumed. First, where there is the "[a]ctual or constructive denial of the assistance of counsel altogether." 466 U.S. at 692; *see also United States v. Cronic*, 466 U.S. 648, 658-59 (1984). Second, "various kinds of state interference with counsel's assistance" can warrant a presumption of prejudice. *Strickland*, 466 U.S. at 692. Third, "when counsel is burdened by an actual conflict of interest . . . if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id.* (quotations omitted). As to the first two categories, the Court explained "[p]rejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost." *Id.*

This case does not fit; there is no allegation (or record evidence) of state interference or a conflict of interest. And there was no actual or constructive denial of the assistance of counsel. Prejudice must be demonstrated. A petitioner could, perhaps, show prejudice where his attorney promised, but failed, to file a timely certiorari petition,

- 10 -

particularly if the petitioner relied upon that promise and thereby failed to exercise self-help. But that is not the case here. Fernandez was aware of the deadline and even attempted self-help. He claims he obtained an extension of the filing deadline, but does not claim he requested the appointment of substitute counsel. More is required to demonstrate *Strickland* prejudice. In any event, if a petition for certiorari would have been demonstrably futile there is no prejudice.

Fernandez cites to *Roe* in support of his argument that he need only show a reasonable likelihood that, but for counsel's deficient conduct, he would have petitioned the Supreme Court for review. In *Roe*, the Court held "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe*, 528 U.S. at 480. It then held "to show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id.* at 484.

Neither the Supreme Court nor any Court of Appeals has extended *Roe* to petitions for writ of certiorari and it is not warranted. The Fourteenth Amendment guarantees a criminal defendant the right to counsel on his first appeal of right. *See Evitts v. Lucey*, 469 U.S. 387, 396-7 (1985). Where counsel fails to timely file a notice of appeal, the defendant "forfeit[s] a judicial proceeding to which he was otherwise entitled." *Roe*, 528 U.S. at 485. And, as the *Roe* Court noted, "[f]iling . . . a notice [of appeal] is a purely ministerial task that imposes no great burden on counsel." *Id.* at 474. By contrast, the

- 11 -

Constitution does not guarantee a criminal defendant the right to counsel to pursue a certiorari petition; nor is certiorari review by the Supreme Court a judicial proceeding to which a criminal defendant is entitled. *See* S. Ct. R. 10; *Austin*, 513 U.S. at 8. Moreover, filing a proper certiorari petition is hardly a ministerial duty; it requires considerable effort and insight. In light of these significant differences between notices of appeal and petitions for writ of certiorari (as well as the specific provisions of our CJA Plan), and absent any contrary authority from the Supreme Court, we should not presume ultimate prejudice from counsel's failure to file a petition for certiorari, even when requested to do so.

In his § 2255 motion, Fernandez argues he was prejudiced by counsel's failure to file a certiorari petition because he lost the benefit of *Blakely*. The district court rejected this argument because Fernandez's conviction became final before *Blakely* was decided (June 24, 2004). Fernandez contends:

> The district court overlooked the fact that *Blakely* had been argued on March 23, 2004, which, shows that *Blakely* would have been docketed prior to [Fernandez's] due date for filing the writ. Therefore, had counsel filed the writ of certiorari as requested . . . the writ would have been filed subsequent to *Blakely* being filed. Therefore, *Blakely* would have been decided prior to [Fernandez's] case being decided and *Blakely* would have applied to [his] because [his] case would not have been final.

(Appellant's Pro Se Br. at 3D.) Fernandez's argument is not without merit. If his case was in the pipeline when *Blakely* was decided he would not be subject to the retroactivity test imposed on collateral review cases. But he overlooks the most salient fact—even if his case had not been final when *Blakely* was decided, he would still not be entitled to relief.

In *Blakely*, the Supreme Court invalidated the State of Washington's sentencing scheme, holding it violated the Sixth Amendment because it required a sentencing court to impose a sentence not solely based on "facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 542 U.S. at 303 (emphasis omitted). The Court held any fact, other than a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 301. Fernandez claims *Blakely* would have invalidated the four-point enhancement he received for his role as a leader and organizer. He is mistaken. Fernandez was sentenced under the federal sentencing guidelines; *Blakely* involved state sentencing guidelines.

Nevertheless, and predictably, in *Booker*, the Court held the Sixth Amendment as construed in *Blakely* applied to the federal sentencing guidelines. 543 U.S. at 244. But *Booker* does not apply retroactively to cases on collateral review. *See Bellamy*, 411 F.3d at 1186-87. Though he does not argue the point, Fernandez would be entitled to relief if his petition for certiorari was in the pipeline when *Booker* was decided on January 12, 2005. But Fernandez's certiorari petition would have to have been filed either by March 7, 2004, or May 6, 2004 (with the extension he claims he received). *See* per curiam Order and Judgment at n.1. For the purpose of showing *Strickland* prejudice, it is far too speculative for us to presume his case would have remained in the pipeline for a period of between eight and ten months.[9] Thus, even if his counsel had filed a timely certiorari

---

[9] The petitions for certiorari in *Booker* were filed on July 21, 2004, and were

- 13 -

petition it is highly unlikely Fernandez would have been able to avail himself of the rule announced in *Booker*. But he has an even more fundamental problem.

It is quite clear the Supreme Court would not have granted Fernandez's certiorari petition to decide the constitutionality of the federal sentencing guidelines even if it had been timely filed. It is, indeed, a daunting task for a petitioner to demonstrate that his certiorari petition would have been granted because "[r]eview on a writ of certiorari is not a matter of right, but of judicial discretion." S. Ct. R. 10. The Court grants few petitions and then "only for compelling reasons."[10] *Id.* For Fernandez, the task is nearly impossible because the Supreme Court would almost never issue a writ of certiorari to review an issue not preserved in the lower courts. Though he did challenge the sentencing enhancement he received on direct appeal, Fernandez did not claim in the district court or on appeal that the sentencing process was unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which had already been decided.[11] By contrast, the defendants in both *Blakely* and *Booker*—whose certiorari petitions were granted—expressly challenged the constitutionality of the schemes under which they

---

granted on August 2, 2004. The case was argued on October 4, 2004.

[10] In the 2007 term, 8,241 certiorari petitions were filed. *See* 2008 Year-End Report on the Federal Judiciary at 10, *available at* http://www.supremecourtus.gov/publicinfo/year-end/year-endreports.html. "The success rate for certiorari petitions . . . is approximately 1.1%." *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252, 2272 (2009) (Roberts, C.J., dissenting).

[11] In *Apprendi*, the Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

- 14 -

were sentenced in their direct appeals. *See State v. Blakely*, 47 P.3d 149, 159 (Wash. Ct. App. 2002); *United States v. Booker*, 375 F.3d 508, 510 (7th Cir. 2004).

Fernandez is not entitled to relief even if we accept as true his contention that he asked his attorney to file a certiorari petition because he cannot demonstrate prejudice and there is no rational basis for us to presume prejudice. The district court was right for the wrong reasons. *See United States v. Whalen*, 976 F.2d 1346, 1348 (10th Cir. 1992); *see also Swoboda v. Dubach*, 992 F.2d 286, 291 (10th Cir. 1993) ("[We] can affirm for reasons other than those relied on by the district court, as long as those reasons find support in the record.").